UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                              :
                                                    :    Chapter 11
EOS AIRLINES, INC.,                                 :    Case No. 08-22581 (ASH)
                                                    :
                    Debtor.                         :
---------------------------------------------------------------x
EOS AIRLINES, INC.,                                 :
                                                    :
                    Plaintiff,                      :    Adv. Proc. No. 08-08406-ASH
                                                    :
        -vs-                                        :
                                                    :
NATIONAL CITY BANK OF MIDWEST,                      :
HASSAN TATANAKI, FREEMARKET                         :
GLOBAL, LTD., ERIKA VILLALBA, JOHN                  :
DOE,                                                :
                                                    :
                    Defendants.                     :
---------------------------------------------------------------x

**ORDER GRANTING DEBTOR'S MOTION TO DISMISS
COUNTERCLAIMS  OF HASSAN TATANAKI AND MOTION
<u>FOR PARTIAL JUDGMENT ON THE PLEADINGS</u>**

Upon the *Debtor's Motion to Dismiss Counterclaims of Hassan Tatanaki and Motion for Partial Judgment on the Pleadings*, of EOS Airlines, Inc., Debtor-in-Possession (the "Debtor"), dated November 5, 2008 (the "Motion"); the Motion having come on for hearing on January 6, 2009 before Honorable Adlai S. Hardin, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York (the "Hearing"), at which Hearing Nicholas J. Brannick, Esq. of Squire, Sanders & Dempsey, L.L.P., appeared on behalf of the Debtor and in support of the Motion, Ira R. Abel, Esq. of Cohen Tauber Spievack & Wagner LLP appeared on behalf of the Official Committee of Unsecured Creditors, and took no position on the Motion and Charles E. Simpson, Esq. of Windels Marx Lane & Mittendorf, LLP, attorneys for Hassan Tatanaki ("Tatanaki") appeared in opposition to the Motion; the Court

{10489465:2}

having reviewed the Motion, the *Objection to Debtor's Motion to Dismiss Counterclaims of Hassan Tatanaki and for Partial Judgment on the Pleadings* submitted on behalf of Tatanaki and the *Response of Debtor to Objection of Hassan Tatanaki to Debtor's Motion to Dismiss Counterclaims of Hassan Tatanaki and Motion for Partial Judgment on the Pleadings* submitted on behalf of the Debtor; this Court having given all parties who desire to be heard an opportunity to do so; for the reasons more fully stated on the record at the Hearing; it appearing that sufficient cause exists; and after due deliberation,

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

IT IS HEREBY FOUND AND DETERMINED THAT:

1.  On or about April 22, 2008, the Debtor and Tatanaki entered into a Charter Aircraft Services Agreement (the "Agreement") for the exclusive use of the Debtor's aircraft with a seating capacity of 46 passengers to carry 28 passengers (the "Passengers"). The Agreement also provided for carriage and the provision of first class catering and accommodations for the Passengers.

2.  The Passengers were to be transported from John F. Kennedy International Airport ("JFK") to London Stansted International Airport ("STN") on April 23, 2008 and from STN to Cairo, Egypt ("CAI") on April 24, 2008, with a ferry flight returning the aircraft to STN from CAI on April 24, 2008 (collectively, the "Outbound Trip"). An aircraft was then to be ferried from STN to CAI on April 28, 2008, with the Passengers returning from CAI to STN on April 29, 2008 at 6:00 a.m., local Cairo time, with continued return service to JFK (collectively, the "Return Trip").

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

3. The contract price under the Agreement was $470,200.76 (the "Contract Price"), divisible as follows: (i) $441,000 for the passenger and ferry flights; (ii) $10,000 for catering; (iii) $15,000 for additional fuel; and (iv) $4,200.76 for taxes. The full Contract Price was placed in escrow (the "Deposit") with the Debtor's escrow agent, National City Bank of Midwest ("National City").

4. The Outbound Trip occurred without incident.

5. On Saturday, April 26, 2008, the Debtor commenced a chapter 11 case under Chapter 11 of Title 11 of the United States Code before this Court.

6. The Debtor undertook the Return Trip ferry flight between STN and CAI on April 28, 2008, however, a dispute arose between the Debtor and its caterer, whereby the Debtor's caterer refused to provide catering services due to the Debtor's filing of the chapter 11 petition. As a result of this dispute, the ferry flight for the Return Trip was delayed beyond the evening curfew imposed by STN, preventing the Return Trip ferry flight from departing on April 28, 2008.

7. As a result of the Debtor's inability to perform the ferry flight for the Return Trip on April 28, 2008, the Return Trip between CAI and STN, continuing on to JFK, scheduled for April 29, 2008, was delayed between 8 to 10 hours. However, the Return Trip was ultimately performed by Debtor despite this delay.

8. Tatanaki asserts counterclaims against the Debtor categorized as follows: (i) claims arising from the alleged failure of the Debtor to provide first class catering on the Return Trip (the "Catering Claims"); (ii) claims arising from the alleged failure of the Debtor to provide first class accommodations on the Return Trip because the Debtor placed between 12 and 14 of

3

the Debtor's employees on the Return Trip from STN to JFK (the "Accommodations Claims") and (iii) claims arising from the delay of the Return Trip (the "Delay Claims").

9. The Catering Claims and Accommodation Claims are not presently before this Court on the Motion.

10. Tatanaki's Delay Claims arise from the fact that 10 of the 28 Passengers scheduled to return to JFK on April 29, 2008 via the delayed Return Trip elected to purchase first class tickets (the "Tickets") to return to JFK (the "Purchasing Passengers"). Tatanaki did not buy these tickets directly or make the decision to purchase these tickets and the Purchasing Passengers were not within Tatanaki's control.

11. The Delay Claims are based on Tatanaki's voluntary decision to reimburse the Purchasing Passengers for the Tickets to JFK at a cost of $120,765.

12. By the Motion, the Debtor seeks to dismiss all of Tatanaki's Delay Claims. The Debtor's Motion is predicated on the *Convention for the Unification of Certain Rules for International Air Carriage by Air Done at Montreal on 28 May 1999* (the "Montreal Convention").

13. The Montreal Convention is a treaty that has been signed by each of the three countries in which the Outbound Trip and the Return Trip contemplated by the Agreement operated; the United States, the United Kingdom and Egypt.

14. The parties agree that the Montreal Convention generally governs the air transportation contemplated by the Agreement.

15. The parties dispute whether Article 19 of the Montreal Convention applies to Tatanaki's Delay Claims. That provision provides, in relevant part:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers…. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

16. On its face, Article 19 appears to apply to the Delay Claims, as the Return Flight was delayed, but ultimately performed. In his opposition to the Motion, Tatanaki cites various cases in support of his argument that Article 19 of the Montreal Convention does not apply to the Delay Claims because the Debtor allegedly failed to perform under the Agreement. *See, generally, In re Nigeria Charter Flights Contract Lit.*, 520 F. Supp.2d 447, 455 (E.D.N.Y. 2007); *Weiss v. El Al Israel Airlines*, 433 F. Supp.2d 361, 367 (S.D.N.Y. 2006); *Wolgel v. Mexicana Airlines*, 821 F.2d 442, 444 (7th Cir. 1987); *Shifrin v. Compagnie Nationale Air France*, 2001 WL 204801 at page 2 (N.D. Ill. 2001). However, each of these cases is distinguishable from the facts before this Court. In *Nigeria* the flight was cancelled and the passengers stranded. In *Weiss* and *Wolgel* the passengers were involuntarily "bumped" from their flights and not transported. These cases are materially different from this case, where the Return Flight was delayed, but ultimately flown.

17. Therefore, this Court concludes that Article 19 of the Montreal Convention applies to the Delay Claims. Because the Montreal Convention applies to the Delay Claims, Tatanaki's exclusive remedy for the Delay Claims must be found within the Montreal Convention, which preempts all state law claims, whether in law or equity, arising from the delay of the Return Trip. *See* Montreal Convention, Art. 29; *Paradis v. Ghana Airways Limited*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004), *aff'd* 194 Fed. Appx. 5 (2d Cir. 2006).

18. With regard to Tatanaki's alleged damages based on the Delay Claims, the Debtor argues, in the alternative, that under the Montreal Convention either: (a) Tatanaki is

5

entitled to no damages under Article 20 of the Montreal Convention or (b) Tatanaki's damages are limited to $67,386.90 under Articles 22 and 23 of the Montreal Convention.

19. Article 22, paragraph 1 of the Montreal Convention provides, that "[i]n the case of damage caused by delay as specified in Article 19 in carriage of persons, the liability of the carrier for each passenger is limited to 4 150 Special Drawing Rights."

20. The parties agree that 4,150 Special Drawing Rights on the date of the Return Trip would result in a maximum individual passenger claim of approximately $6,738.69, or maximum damages arising from the Delay Claims for the ten (10) Purchasing Passengers of $67,386.90.

21. During argument on the Motion, counsel for Tatanaki argued, apparently for the first time, that the limit on damages imposed under Article 22 of the Montreal Convention for delay under Article 19 of the Montreal Convention does not apply due to the provisions of Article 22, paragraph 5, of the Montreal Convention, which provides in relevant part that:

> The foregoing provisions of paragraphs 1 and 2 of this Article shall not apply if it is proved that the damage resulted from an act or omission of the carrier, its servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result….

22. The provisions of Article 22, paragraph 5, of the Montreal Convention were not raised as an affirmative defense by Tatanaki in his answer, filed before this Court on October 17, 2008 [Doc. 5] (the "Answer"), nor does the Answer appear to contain any allegations of any "intent to cause damage" or conduct on the part of the Debtor in conducting the Return Trip that would rise to the level of being reckless or that the Debtor had any "knowledge that damage would probably result" from the delay of the Return Trip.  Based on the pleadings before this Court and the representations during the hearing on the Motion, the Court harbors grave doubt that such questions of fact could be established by Tatanaki.  However, due to this Court's

conclusions regarding Article 20 of the Montreal Convention, this Court need not render any decision regarding the application of Articles 22 and 23 of the Montreal Convention to the Delay Claims.

23. Paragraph 20 of the Montreal Convention, entitled "Exoneration," provides, in relevant part:

> If the carrier proves that the damage was caused or contributed to by the negligence or other wrongful acts or omission of the person claiming compensation, or the person from whom he or she derives his or her rights, the carrier shall be wholly or partly exonerated from its liability to the claiming to the extent that such negligence or wrongful act or omission caused or contributed to the damage….

24. On its face, the exoneration provision of Article 20 of the Montreal Convention would appear to apply to the Delay Claims. The costs incurred by the Purchasing Passengers arose solely from their voluntary decision to purchase first class return flights to JFK rather than wait for the delayed Return Trip. Had the Purchasing Passengers simply waited for the return flight, as the remaining 18 passengers did, they would have incurred no additional costs. Tatanaki's alleged damages arise from his own voluntary decision to reimburse the Purchasing Passengers following their voluntary decision to acquire alternative arrangements. This Court finds no bases to charge the Debtor or its creditors for the voluntary decisions of the Purchasing Passengers or Tatanaki.

25. Tatanaki argues, however, that he is seeking damages for the Debtor's breach of the Agreement arising from the delay of the Return Trip, not the Tickets purchased by the Purchasing Passengers or Tatanaki's reimbursement of the Purchasing Passengers. However, as discussed above, the Montreal Convention provides Tatanaki's exclusive remedy for any damages arising from the delay of the Return Trip. If allowed, this argument would undermine

the Montreal Convention, which is a treaty adopted by the United States that has the force of a statute and is binding.

26. Therefore, this Court finds that the Debtor is entitled to exoneration under Article 20 of the Montreal Convention with regard to the Delay Claims and that Tatanaki is entitled to no damages arising from or related to the Delay Claims.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. All counterclaims of Tatanaki that constitute Delay Claims, including, but not limited to Mr. Tatanaki's Third Counterclaim, found at paragraphs 129-141[2] of Mr. Tatanaki's Answer, are hereby dismissed, <u>with</u> <u>prejudice</u>.

2. Mr. Tatanaki's damages arising from counterclaims that constitute Catering Claims and Accommodations Claims are unaffected by this Order.

3. Mr. Tatanaki's claim filed against the Debtor's estate designated as claim number 479 by the Debtor's claims agent is hereby disallowed in its entirety.

4. The Debtor is entitled to not less than $353,200.76 from the Deposit, net of any costs of National City either approved by this Court or stipulated and agreed to among the Debtor and the Official Committee of Unsecured Creditors of the Debtor.

Dated: White Plains, New York
       January 28, 2009

                                      <u>/s/ Adlai S. Hardin, Jr.</u>
                                      UNITED STATES BANKRUPTCY JUDGE

---

[2] It appears as though paragraphs 131-139 were omitted from the Answer.